# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 3, 2009 Session

## ROBERT KENT DRAKE, ET AL. v. PAULA MAE DRAKE

**Appeal from the Chancery Court for Hamblen County**
**No. 2008-471      Hon. Thomas R. Frierson, II., Judge**

---

### No. E2009-00540-COA-R3-CV - FILED JANUARY 19,2010

---

Children of defendant mother brought this action to have a conservator appointed for their mother on the grounds that the mother suffered dementia, Parkinson's disease and other infirmities and was incompetent and unable to make decisions about her health and finances. Following trial, the Trial Court found there was clear and convincing evidence that the mother was disabled and in need of supervision, protection and assistance by means of a conservatorship due to her permanent mental incapacity. The sons were named as co-conservators of her person and estate. The attorney for the mother filed an appeal, and we affirm the Judgment of the Trial Court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J., and JOHN W. MCCLARTY, J., joined.

W. Douglas Collins, Morristown, Tennessee, for the appellant(s), Paula Mae Drake.

Cynthia J. King, Newport, Tennessee, for the appellee(s), Robert Kent Drake and Dennis Solomon Drake.

### OPINION

Petitioners Petitioned for the appointment of a conservator for the person and estate of Paula Mae Drake, alleging that Ms. Drake, who is their mother, suffered from dementia,

Parkinson's disease, and coronary artery disease, and was incompetent and unable to make decisions about her health or finances. A guardian ad litem and an attorney ad litem were appointed for Ms. Drake.

The Trial Court conducted an evidentiary hearing, and took the issues under submission at the close of the evidentiary hearing. The Court then issued a Memorandum Opinion, finding there was clear and convincing evidence (from the testimony and the doctors' statements) that Ms. Drake was disabled and in need of supervision, protection and assistance by means of a conservatorship due to her permanent mental incapacity. The Court found that it was in Ms. Drake's best interests to name her sons as co-conservators of her person and estate, and entered an Order of Conservatorship.

Ms. Drake then filed a Motion for New Trial, alleging that one of the physicians who opined that Ms. Drake was incompetent, i.e., Dr. Julie Jacques, recanted her opinion two days prior to trial, but that Ms. Drake's counsel was unable to schedule a deposition or obtain a written statement from Dr. Jacques prior to trial. The Court overruled the Motion for New Trial, as well as Ms. Drake's attorney's Motion to Withdraw as counsel. This appeal ensued.

The issues presented are:

1.     Whether the evidence presented at trial clearly and convincingly established that Ms. Drake is disabled and in need of a conservatorship?

2.     Whether the Trial Court failed to adequately consider evidence that was discovered on the eve of trial?

In an involuntary conservatorship proceeding such as this, the burden of proof is on the petitioners to show by clear and convincing evidence that the proposed ward is a "disabled person" as defined in the conservatorship statute. *In re: Conservatorship of Groves*, 109 S.W.3d 317 (Tenn. Ct. App. 2003). This heightened standard of proof should be enough to produce in the fact-finder's mind a "firm belief or conviction regarding the truth of the factual propositions sought to be established by the evidence." *Id., quoting Fruge v. Doe*, 952 S.w.2d 408, 412 (Tenn. 1997). Tenn. Code Ann. §34-1-101(7) defines a "disabled person" as "any person eighteen (18) years of age or older determined by the court to be in need of partial or full supervision, protection and assistance by reason of mental illness, physical illness or injury, developmental disability, or other mental or physical incapacity."

In this case, the proof showed that Ms. Drake required extensive care at least since 2003, the time when she moved to Tennessee and moved in with her son and daughter-in-

law. They both testified that she needed daily assistance in bathing and hygiene, food procurement and preparation, managing medication, paying bills, transportation, etc. The Drakes testified that they had not been able to leave Ms. Drake alone the entire time she was living with them, and had to hire nurses to care for her in their absence. Other witnesses' testimony substantiated this evidence, as well as the fact that Ms. Drake was currently receiving such assistance in a nursing home facility. The Drakes and Lt. Cloer also testified regarding many instances of bizarre and dangerous behavior by Ms. Drake within the year before trial.

Ms. Drake argued that she was capable of caring for herself, but admitted that she could not drive, that she did not know what medications she was prescribed, that she did not know how much income she received each month nor what bills she had to pay, etc. Ms. Drake's testimony overall is muddled, and she seemed confused at times about what she was supposed to be talking about. Ms. Drake attempted to refute some of the testimony regarding her erratic behavior over the past year, but her explanations were not logical. Ms. Drake stated that her home in Ohio was not in disrepair when she left it, but then could not explain why the years-old photos that were put in evidence showed similar conditions. She tried to explain that the "leprechaun" she told her daughter she saw in the hospital was a priest with a pointy hat who came to take her to the bathroom. She also claimed the doctor did a somersault over her bed while explaining her insurance benefits.

The medical evidence showed Ms. Drake suffered from dementia, as her family doctor reported in her sworn report, and this was confirmed by a letter from her neurologist, as well as the records from Lakeshore Hospital. In fact, the Lakeshore records showed that the physician there diagnosed her with a psychotic disorder. Ms. Drake did not dispute the testimony that she hit her son on the face with a wet house shoe, and admitted that she did hit him once or twice because she was angry that he wanted to put her house shoes in the dryer. Lt. Cloer, an independent witness, corroborated the Drakes' account of this episode of violence, and testified that he called the sheriff's department and took part in the decision to have Ms. Drake transported to the hospital, because he felt she was a danger. The Court saw and heard all of the witnesses testify, including Ms. Drake, and credited the testimony of her children and daughter-in-law, as well as Lt. Cloer.

The Trial Court also had the benefit of the guardian's report, wherein she detailed her interviews with other family members and friends, as well as Ms. Drake, and made the recommendation that Ms. Drake was in definite need of a conservator. The record establishes the Court had clear and convincing evidence that Ms. Drake was a disabled person under the statute, and the Trial Court did not err in appointing a conservator for Ms. Drake.

Finally, Ms. Drake argues the Trial Court did not properly consider the Lakeshore records, which were the "most contemporaneous" records of Ms. Drake's mental status. A review of these records shows, however, that they would support the Trial Court's ruling, as Ms. Drake's dementia is mentioned in several places, as is the treating psychiatrist, Dr. Crawford's, diagnosis that Ms. Drake suffers from a psychotic disorder. This argument is without merit.

The Judgment of the Trial Court is affirmed with the cost of the appeal assessed to Paula Mae Drake's Estate.

_____

_____
HERSCHEL PICKENS FRANKS, P.J.